**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **DONALD RAY SIMMONS,** § | |
| Petitioner, § | |
| § | |
| v.  § | |
| § | Civil Action No. 4:08-CV-442-Y |
| **NATHANIEL QUARTERMAN, Director,** § | |
| **Texas Department of Criminal Justice,** § | |
| **Correctional Institutions Division,** § | |
| Respondent § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Donald Ray Simmons, TDCJ-ID #1302502, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Tennessee Colony, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

#### C. FACTUAL AND PROCEDURAL HISTORY

In 2005 Simmons was indicted for the capital murder of Benito Sanchez and attempted

capital murder of Sonny Alaniz for remuneration in Tarrant County, Texas. (1Clerk's R. at 6; 2Clerk's R. at 6)[1]  A jury found Simmons guilty as charged in each indictment and assessed his punishment at seventy years' confinement on the attempt charge, and the trial court assessed a mandatory life sentence on the capital charge, the sentences to run concurrently. (1Clerk's R. at 180, 192; 2Clerk's R. at 210, 217)  The Second District Court of Appeals of Texas affirmed the trial court's judgments, and the Texas Court of Criminal Appeals refused Simmons's petition for discretionary review. *Simmons v. Texas*, Nos. 2-05-172-CR & 2-05-173-CR, slip op. (Tex. App.–Fort Worth July 20, 2006) (not designated for publication); *Simmons v. Texas*, PDR No. 1154-06.  Simmons also filed two state applications for habeas corpus relief, one for each conviction, which were denied without written order by the Texas Court of Criminal Appeals on the findings of the trial court. *Ex parte Simmons*, State Habeas Appl. Nos. WR-69,993-01 & WR-69,993-02, at cover.  This federal petition followed.

The state's evidence reflected that Simmons hired Leon Walker and Djuan Gipson to either kill or rob Alaniz, Simmons's supplier, for money and marihuana because Simmons believed Alaniz was overcharging him for marihuana and Simmons owed Alaniz $37,000.  Around midnight on May 16, 2000, a resident returning to the Indian Creek Apartments with her children saw two males sitting on the steps to her apartment, and after entering the apartment she heard a gun shot and saw a muzzle flash outside her door.  She slammed the door shut and called 911.  After the shooting stopped, she peeked through the blinds and saw Sanchez, a friend of Alaniz, laying dead in the parking lot. (*Id.* at 51-70)  Another resident, who was installing a car radio in his car in the

---

[1]"1Clerk's R." refers to the state court record in criminal cause number 0974325AR (attempted capital murder); "2Clerk's R." refers to the state court record in criminal cause number 0974326AR (capital murder).

apartment parking lot, saw two black males park and get out of a car. The men walked between two buildings across from where he was standing. He bent down inside his car and then heard a series of gunshots from two different caliber guns. Shortly thereafter he saw the two men walking quickly back to the car. One of the two held a large caliber automatic pistol. (*Id.* at 71-91) Neither resident could identify the men.

The case went unsolved until 2001, when Jim Ford, the detective assigned to the case in 2000, obtained the names of several individuals who had knowledge about the shooting, including Alaniz, Jason Gehring, an associate of Simmons in the drug business, Leteshia Barnett, Simmons's girlfriend, and Cassius Brown, a friend of Simmons. Alaniz testified that he believed Simmons was involved in the shooting and had paid his cousin Ken Gay and the second shooter to kill him. (Reporter's R., vol. 5, at 116-95, 205-70) Jason Gehring, who was interviewed by Ford in March 2002, testified that he overheard Gipson tell Walker that Simmons, also known as Little Junior, told him they shot "the wrong Mexican" and that they were supposed to kill the owner of the black Tahoe, not the driver. Gehring's sentence in an unrelated federal criminal case was reduced for his cooperation in Simmons's case. (Reporter's R., vol. 6, at 84-115)

Leteshia Barnett, who refused to cooperate with Ford initially, eventually executed a written statement in 2003 implicating Simmons in the offenses. She testified that Simmons had partially paid Alaniz for an amount of marijuana with counterfeit money, and that Alaniz came to her apartment to collect the money. When Alaniz knocked, she did not answer the door. Simmons told her that he was going to pay Walker and Gipson to kill Alaniz, gave her money to take to Walker, and left town. When she took the money to Walker, he told her that she would not have to worry about the Mexican knocking on her door because he "took care of him," and he told her not to tell

3

anyone. Simmons called her the next day regarding an article in the newspaper about the shooting and asked her what the article said. A week before trial, at Simmons's request, Barrett gave a second written statement to defense counsel refuting much of her written statement to Detective Ford. She stated that she gave the second statement because she did not want to testify at trial, but she stood by her original statement. (Reporter's R., vol. 5, at 116-202) Cassius Brown testified that Simmons showed him a newspaper clipping about the shooting and told him he had done it because he owed the guy a large sum of money for marijuana. (Reporter's R., vol. 6, at 118-35) After his arrest, Simmons told a jailer that he did not want to be moved to a pod where other Hispanic prisoners were kept because "he killed a Mexican" and feared for his safety. (Reporter's R., vol. 5, at 197-202)

For the defense, Leon Walker, who had pled guilty to the offenses and was serving 40-year sentences, testified that Simmons was his middleman with Alaniz and that he purchased large amounts of marihuana from Alaniz through Simmons. He wanted to deal personally with Alaniz when he received bad marijuana and counterfeit money back from Alaniz. He found out where Alaniz was staying, and, a few days later, he and another individual named Mike followed Alaniz throughout the day to confirm that he was staying at the apartment complex. That evening, Walker and Mike lay in wait for Alaniz under a tree near the parking lot. When Alaniz returned to the apartment complex with Sanchez, Walker confronted Alaniz, holding a gun at his side. When Sanchez drew a gun, Walker shot Sanchez six times and Alaniz twice. Walker testified that he acted alone and that Simmons had nothing to do with the events that transpired on that night. (Reporter's R., vol. 6, at 166-232)

In rebuttal, the state called Terrence Holiman, an inmate with Walker in the Tarrant County

4

jail, who testified that Walker told him he was paid to shoot Alaniz by Little Junior because Little Junior owed Alaniz money. (*Id.* at 250-64) The state also called Brian Young, another inmate in the Tarrant County jail, who testified that Simmons told him he had set up the whole thing as a robbery and that he, Walker, and Gipson were going to split the money and the marihuana three ways. (*Id.* at 266-95)

### D. ISSUES

Simmons claims are construed as follows: (1) The state habeas court violated his constitutional rights by denying him an opportunity to develop the record by holding an evidentiary hearing; (2) The trial court violated his constitutional rights by refusing to address the merits of his *Batson* challenge and denying his motion for a continuance; (3) His constitutional rights were violated as a result of jury misconduct; (4) The evidence is factually insufficient to support his convictions; and (5) He received ineffective assistance of counsel at trial. (Pet'r Brief in Support, Table of Contents at i-ii)

### E. RULE 5 STATEMENT

Quarterman believes that Simmons has sufficiently exhausted his state remedies as to his claims. (Resp's Answer at 6)

### F. DISCUSSION

#### *1. Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

5

federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

The Act further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). Factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion, it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

## 2. *State Habeas Proceedings*

The record reflects the state habeas court determined that a hearing was necessary only on

Simmons's ineffective assistance claims and recommended that relief be denied on his remaining claims based on the assertions contained in the state's answer. (1State Habeas R. at 77; 2State Habeas R. at 79)[2] After conducting a hearing by affidavit, the court adopted the state's proposed findings of fact and conclusions of law and recommended denial of relief. (1State Habeas R. at 87-101; 2State Habeas R. at 91-105) In turn, the Texas Court of Criminal Appeals denied Simmons's state applications based on the trial court's findings.

Simmons claims his constitutional right to due process was violated, and § 2254(e)(1)'s presumption of correctness should not apply to the state habeas court's factual findings, because (1) the state court failed to afford him an evidentiary hearing on his claims, (2) the state habeas court judge was not the same judge to preside over his trial, (3) the state habeas court's factual determinations and resolution of mixed questions of law and fact were unreasonable, and (4) the state habeas court failed to consider his *Batson*, jury misconduct, and factual sufficiency claims for procedural reasons. (Pet'r Brief in Support at 12-15)

It is well established that infirmities in state habeas proceedings do not constitute grounds for federal habeas relief. *See Duff-Smith v. Collins,* 973 F.2d 1175, 1182 (5th Cir. 1992). Contrary to Simmons's assertions, a state habeas court's factual determinations are entitled to a presumption of correctness under § 2254(e)(1), regardless whether the state habeas court held a live evidentiary hearing, versus a paper hearing, or whether the state habeas judge was the same judge who presided at trial. *See Morrow v. Dretke*, 367 F.3d 309, 315 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 951 (5th Cir. 2001); *Carter v. Johnson*, 131 F.3d 452 (5th Cir. 1997); *Hudson v. Quarterman*, 273

---

[2] "1State Habeas R." refers to the record in Simmons's state habeas application no. WR-69,993-01; "2State Habeas R." refers to the record in his state habeas application no. WR-69,993-02.

Fed. Appx. 331, 334 (5${}^{th}$ Cir. 2008).  Deference to a state habeas court's factual determinations is not dependent upon the quality of the state court's evidentiary hearing.  *See Valdez*, 274 F.3d at 951; *Bass v. Dretke*, No. 02-20289, 2003 WL 22697282, at * 3 (5${}^{th}$ Cir. Nov. 14, 2003) (not designated for publication).  Furthermore, if an issue is a mixed question of law and fact, a state court's background fact findings are subject to the deference requirement of § 2254(e)(1).  A petitioner can defeat the presumption of correctness only with clear and convincing evidence.  *See* 28 U.S.C. § 2254(d)(1); *Duncan v. Cockrell*, 70 Fed. Appx. 741, 746 (5${}^{th}$ Cir. 2003).  Simmons has failed to rebut the presumptive correctness of the state habeas court's findings nor does an independent review of the state court records reveal clear and convincing evidence that would rebut the presumption of correctness.

Finally, the state procedural bar against relitigating claims on state habeas review is not the type that would bar this court's review of the merits of Simmons's claims or raise a constitutional due process question.  *See Ylst v. Nunnemaker,* 501 U.S. 797, 804 n.3 (1991) (identifying a rule preventing the relitigation on state habeas of claims raised on direct appeal as presenting no bar to federal habeas review); *Bennett v. Whitley,* 41 F.3d 1581, 1582-83 (5${}^{th}$ Cir. 1994).  Federal constitutional questions unsuccessfully raised at trial and upon appeal through all the state's courts need not be relitigated by state habeas corpus or other post-conviction remedies.  A court may look to the earlier disposition of a claim upon direct appeal.  *Ylst,* 501 U.S. at 804.

### 3. *Batson* Challenge

Simmons, an African American, claims the trial court violated his constitutional right to due process by denying his *Batson* challenge and by failing to verbalize its reasons for doing so.  (Pet'r Memorandum a16-20)  The venire panel included five African American veniremembers, 5, 12, 16,

8

30 and 48. Veniremembers 12 and 30 served on the jury. (Reporter's R., vol. 4, at 6-7) Simmons complains the state used a peremptory challenge to strike veniremember 5, without questioning her during voir dire, because of her race.

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court outlined the methodology for evaluating a claim that jurors were improperly stricken based on their race. Initially, the defendant must make a *prima facie* showing that the challenged strike has been employed in a racially discriminatory manner. Once this showing has been made, the prosecutor must articulate race-neutral selection criteria. The district court then must determine whether the defendant has established purposeful racial discrimination. *Id.* at 93-98.

Simmons raised his claim on direct appeal, and, applying this three-step process, the state appellate court addressed the issue as follows:

> [T]he State struck venireperson Shirlan Felder, who is black. [Simmons] raised a *Batson* challenge to the strike. The State noted that of the five black venirepersons, two were seated on the jury. The State offered the following race-neutral reasons for striking Felder, most derived from her answers to the jury questionnaire: she has a sister who is incarcerated; she has had an unpleasant experience with police; she appeared to have difficulty staying awake at times during the two-day voir dire; her son works in the Tarrant County jail, where many of the State's witnesses were incarcerated at the time of trial; and she is a Seventh Day Adventist. The prosecutor explained that Felder's religious affiliation was significant because Seventh Day Adventists "at times have difficulty judging others." In response, [Simmons]'s counsel noted that the State had not exercised strikes against two other venirepersons with incarcerated relatives or another venireperson who said he might have a problem judging someone else. Counsel also stated that he had a clear view of Felder and did not see her nodding off. Finally, counsel argued that "the bottom line" of [Simmons]'s *Batson* challenge was that the State struck Felder without asking her "one single question[.] And that's why we contend that they don't have a race-neutral reason for striking her. They didn't ask." The trial court overruled [Simmon]'s challenge.
>
> We hold that the trial court's ruling on [Simmon]'s *Batson* challenge was not clearly erroneous. The State offered race-neutral explanations for striking Felder, and [Simmons] failed to show that the State's stated explanations were mere pretexts. With regard to the State's failure to ask any oral questions of Felder, we have

9

> previously held that a veniremember's answers on a jury questionnaire can provide a race-neutral reason to strike the veniremember.

*Simmons*, Nos. 2-05-172-CR & 2-05-173-CR, slip copy, at 5-8 (citations omitted).

Assuming Simmons satisfied step one of the *Batson* framework and that the state continued through step two by offering race-neutral explanations for their strike, the question is whether Simmons has carried his burden to prove purposeful discrimination. *Hernandez v. New York*, 500 U.S. 352, 358-60 (1991). The critical question in determining whether a prisoner has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for the peremptory strike. *Purkett v. Elem*, 514 U.S. 765, 768 (1995). Typically, an evaluation of the prosecutor's state of mind based on demeanor and credibility lies within the province of the trial judge, and the trial court's findings in this context are entitled to the presumption of correctness. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 339-40 (2003); *Hernandez*, 500 U.S. at 364.

The reasons given by the prosecutor were racially neutral, and, implicitly, the trial court, by denying Simmons's *Batson* claim, found the prosecutor's explanations persuasive and credible. In turn, the state appellate court held the trial court's determination of the issue was not clearly erroneous. (Reporter's R., vol. 4, at 6-13) Simmons does not allege sufficient facts or present clear and convincing evidence to show the prosecutor's reasons were race-based. Thus, applying the presumption of correctness to the state courts' factual determinations, the state courts' decision is neither contrary to *Batson* nor unreasonable in light of the evidence presented.

### *4. Motion for Continuance*

Simmons claims the trial court abused its discretion and violated his constitutional right to effective assistance of counsel under the Sixth Amendment by denying his trial counsel's motions

for a one-day continuance on the day trial commenced so as to review newly tendered evidence by the state. (Pet'r Memorandum at 21-26; Reporter's R., vol. 3, at 3-8 & vol. 4, at 15-18, 21-23) Simmons raised this claim in his state habeas application, but the state habeas court expressly determined the claim was procedurally defaulted under state law because it could have been raised on direct review but was not. (1State Habeas R. at 90-91; 2State Habeas R. at 94-95)

Federal habeas review is barred when a state court declines to address a petitioner's claims because he failed to meet the state procedural requirements. Under Texas law, claims that could have been raised on direct appeal but were not cannot be litigated in state habeas proceedings. Even constitutional claims are forfeited if the applicant had the opportunity to raise the issue on appeal. *See Ex Parte Townsend*, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004). This rule, expressly relied upon by the state habeas court, sets out an adequate state ground capable of barring federal habeas corpus review. *See Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004). Absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated by Simmons, the claim is procedurally barred from this court's review. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Finley v. Johnson*, 243 F.3d 215, 219-20 (5th Cir. 2001).

### 5. *Jury Misconduct*

Simmons claims his constitutional right to due process and a fair trial were violated as a result of the jury's consideration of punishment during its deliberations on guilt or innocence. (Pet'r Memorandum at 27-29) During deliberations, the jury sent out a note asking who would decide punishment, and the trial court advised the jury that it was not permitted to answer its question and instructed the jury to confine their deliberations to the evidence and the court's charge and to

continue to deliberate. (Reporter's R., vol. 7, at 52-53) Simmons's counsel moved for a mistrial based on jury misconduct, which the trial court denied.

Relying solely on state law, Simmons raised the issue on appeal and the appellate court addressed the issue as follows:

> A movant for a mistrial based on jury misconduct must prove that (1) misconduct occurred, and (2) the misconduct resulted in harm to the movant. As a general rule, jurors are prohibited from considering punishment during deliberations on guilt/innocence. But to warrant reversal, the jurors must have agreed to "render a guilty verdict in exchange for a lighter punishment." Discussion of punishment without any kind of an agreement is not sufficient to warrant reversal for jury misconduct.
> In this case, the only evidence of jury misconduct is the jury's note asking who would assess punishment. While the note suggests that the jurors improperly discussed punishment during guilt/innocence deliberations, there is no evidence of an agreement of the kind necessary to warrant reversal. Nor has [Simmons] demonstrated any harm.

*Simmons*, Nos. 2-05-172-CR & 2-05-173-CR, slip copy, at 12-13 (citations omitted).

Simmons raised only a state claim of jury misconduct on direct appeal, and, although he raised his federal constitutional claim in his state habeas application, the state habeas court determined it was barred from relitigating matters addressed on direct appeal, and, thus, Simmons could not relitigate his objections to the jury's conduct by a state application for writ of habeas corpus. (1State Habeas R. at 97-98; 2State Habeas R. at 101-02) Simmons's claim under the federal Constitution was expressly denied by the state habeas court on the basis of a state procedural-default rule. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). Absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated by Simmons, the claim is procedurally barred from this court's review. *See Sawyer*, 505 U.S. at 339-40; *Coleman*, 501 U.S. at 750; *Finley*, 243 F.3d at 219-20.

*6. Factual Sufficiency of the Evidence*

Simmons claims the evidence was factually insufficient to support his convictions. (Pet'r Memorandum at 30-33) A factual insufficiency claim does not implicate any federally-secured right and, thus, is not cognizable on federal habeas corpus review. *Fox v. Johnson*, No. 4:00-CV-291-Y, 2001 WL 432247, at *2 (N.D. Tex. Apr. 20, 2001), *adopted*, 2001 WL 540215 (N.D. Tex. May 17, 2001). *See also Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002) (providing standard of review for factual-sufficiency claim is "rooted in the Texas Constitution").

*7. Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where, as here, a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the standard set forth in *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

Simmons claims his trial attorneys rendered ineffective assistance of counsel by failing to (1) investigate and discover critical information involving Gehring, Young, and Barrett, the state's key witnesses, including the fact that they were professional federal informants trying to avoid prison or obtain a reduction of their sentences for their testimony, (2) investigate, interview, and present testimony from Djuan Gipson, (3) secure and properly advise him regarding a 10-year plea offer from the state, and (4) object to Barnett's testimony on the basis that she was his common law wife. (Pet'r Memorandum at 34-49)

Simmons raised his ineffective assistance claims in his state habeas application. The state habeas judge, who was not the judge who presided at trial, denied Simmons's request for an evidentiary hearing, entered findings of fact refuting Simmons's claims, and recommended denial of habeas relief upon the record as supplemented by affidavits and documents, a recommendation accepted by the Texas Court of Criminal Appeals. (1State Habeas R. at 91-96; 2State Habeas R. at 95-100) Simmons has wholly failed to rebut the presumptive correctness of those findings. *See* 28 U.S.C. § 2254(d)(1); *Bell*, 535 U.S. at 698-99; *Haynes v. Cain* 298 F.3d 375, 379-82 (5th Cir. 2002). Nor does an independent review of the state court records reveal clear and convincing evidence that would rebut the presumption of correctness. Without substantiation in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative evidentiary value. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983). Deferring to the state court's findings, which are adequately supported in the record, the state courts' application of *Strickland*'s attorney-performance standard was reasonable.

### 8. *Evidentiary Hearing*

Simmons requests an evidentiary hearing for purposes of further developing the record in

support of his claims.  *See* 28 U.S.C. § 2254(e)(2).  Section 2254(e)(2) provides:

> (e)(2)  If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
> > (A)  the claim relies on–
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Simmons has not met the statutory criteria.  The case can be decided on the record, and the interests of justice do not require a hearing.  Further development of the record is not necessary in order to assess the claims.

## II.  RECOMMENDATION

Based on the foregoing, it is recommended that Simmons's petition for writ of habeas corpus be denied.

## III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document.  The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions,

15

and recommendation until August 19, 2009. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(B)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

### IV.  ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until August 19, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED July 29, 2009.

    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE